# EXHIBIT D

# IN THE COURT OF CHANCERY IN THE STATE OF DELAWARE

| | |
|---|---|
| CODY LAIDLAW, On Behalf of Himself and All Others Similarly Situated,<br><br>          Plaintiff,<br><br>   v.<br><br>ACAMAR PARTNERS ACQUISITION CORP., ACAMAR PARTNERS SPONSOR I LLC, LUIS IGNACIO SOLORZANO AIZPURU, JUAN CARLOS TORRES CARRETERO, DOMENICO DE SOLE, JAMES E. SKINNER, TECK H. WONG, CARLOTZ, INC. and ACAMAR PARTNERS SUB, INC.,<br><br>          Defendants. | C.A. No. 2021- |

## VERIFIED CLASS ACTION COMPLAINT

Plaintiff Cody Laidlaw ("Plaintiff"), through undersigned counsel, brings this stockholder class action on behalf of himself and the holders of the common stock of Acamar Partners Acquisition Corp. ("Acamar Partners" or the "Company") and against (i) the Chief Executive Officer and members of the Board of Directors of Acamar Partners for breaching their fiduciary duties arising out of their efforts to effectuate the proposed merger of the Company with CarLotz, Inc. ("CarLotz") (the "Proposed Transaction" or "Merger"), and (ii) Acamar Partners, Acamar Partners Sponsor I LLC ("Sponsor"), Carlotz, and Acamar Partners Sub, Inc. ("Merger Sub")

- 1 -

as necessary parties for the relief requested herein.

The allegations of this Complaint are based on Plaintiff's knowledge as to himself, and on information and belief based upon, among other things, the investigation of counsel and publicly available information, as to all other matters.

## NATURE OF THE ACTION

1.     Acamar Partners is a blank check company (referred to as a special purpose acquisition company, or "SPAC") being used to acquire CarLotz, a used car company. In facilitating the Merger, the Board authorized the filing of a Form 424(b)(3) Prospectus (the "Prospectus") with the Securities and Exchange Commission ("SEC") that omitted information underlying the Board's determination that the Merger was "fair" to stockholders. The Board failed to obtain an independent determination that the Merger was fair from its financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs"). Instead, the Board utilized then omitted the projections and financial analyses considered in lieu of a fairness opinion. Should the Board not remedy the deficient Prospectus prior to the vote on the Merger, Plaintiff and the other common stockholders of the Company will face irreparable injury. Accordingly, Plaintiff seeks to enjoin the Proposed Transaction until the information outlined below is disclosed.

2.     On October 21, 2020, Acamar Partners entered into an agreement and plan of merger (the "Merger Agreement"), pursuant to which Merger Sub, a wholly-

owned subsidiary of Acamar Partners, will merge with and into CarLotz, with CarLotz continuing as the surviving corporation.

3. The Proposed Transaction implies a pro forma enterprise valuation for CarLotz of $827 million, or 0.88x 2022 estimated revenue of $945 million and 6.8x 2022 estimated gross profit of $121 million. Existing CarLotz shareholders will roll over the vast majority of their existing equity, and as a result current Acamar Partners' stockholder will retain only approximately 41% of the combined company's pro forma equity (the "Merger Consideration").

4. On December 30, 2020, in order to convince Acamar Partners' public common stockholders to vote in favor of the Merger, the Board authorized the filing of the Prospectus and Defendant Soloranzo signed it in his capacity as the Company's Chief Executive Officer. The Prospectus contains material omissions concerning: (i) the financial projections relied on by the Board, and (ii) the financial analyses utilized by the Board to assess the fairness of the Proposed Transaction.

5. The stockholder vote is scheduled for ***January 20, 2021***, at 10:00 a.m., Eastern Time (the "Stockholder Vote"). It is imperative that the material information that has been omitted from the Prospectus is disclosed to the Company's stockholders prior to the Stockholder Vote so they can properly determine whether to vote for or against the Proposed Transaction, and/or redeem their shares.

6.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for breaches of their fiduciary duties.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Acamar Partners' common stockholders sufficiently in advance of the Stockholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' misconduct.

## PARTIES

8.     Plaintiff Cody Laidlaw is, and has been at all relevant times, the owner of Acamar Partners common stock.

9.     Defendant Luis Ignacio Solorzano Aizpuru ("Solorzano") is, and has been at all relevant times, the Chief Executive Officer of Acamar Partners. Defendants Solorzano is a managing member of the Sponsor, and as stated by the Prospectus, has beneficial ownership of the securities held directly by the Sponsor. Should the Merger be consummated, Defendant Solorzano will join the Board of the post-merger company.

10.     Defendant Juan Carlos Torres Carretero ("Torres") is, and has been at all relevant times, the Chairman of the Board of Acamar Partners. Defendants Torres is a managing member of the Sponsor, and as stated by the Prospectus, has beneficial ownership of the securities held directly by the Sponsor.

11.    Defendant Domenico De Sole ("Sole") is, and has been at all relevant times, a director of Acamar Partners. While Defendant Sole does not have voting or dispositive control over the Sponsor, he still has an indirect pecuniary interest in the securities held by the Sponsor through his membership interest.

12.    Defendant James E. Skinner ("Skinner") is, and has been at all relevant times, a director of Acamar Partners. While Defendant Skinner does not have voting or dispositive control over the Sponsor, he still has an indirect pecuniary interest in the securities held by the Sponsor through his membership interest. Should the Merger be consummated, Defendant Skinner will join the Board of the post-merger company.

13.    Defendant Teck H. Wong ("Wong") is, and has been at all relevant times, a director of Acamar Partners. While Defendant Wong does not have voting or dispositive control over the Sponsor, he still has an indirect pecuniary interest in the securities held by the Sponsor through his membership interest.

14.    The defendants identified in paragraphs 9 through 13 are collectively referred to herein as the "Board" or the "Defendants".

## NECESSARY PARTIES

15.    Acamar Partners Acquisition Corp. ("Acamar Partners") is a Delaware corporation with its principal executive offices located at 1450 Brickell Avenue, Suite 2130, Miami, Florida 33131. The Company's common stock trades on the

Nasdaq under the ticker symbol "ACAM." Acamar Partners is a blank check company incorporated in November 2018 for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or similar business combination with one or more businesses. Acamar Partners is named as a Defendant herein as it is a necessary party for the relief requested.

16.    Acamar Partners Sponsor I LLC ("Sponsor") is a Delaware limited liability company, with its business address located at1450 Brickell Avenue, Suite 2130, Miami, Florida 33131. Sponsor holds a 20% ownership interest of Acamar Partners, with 7,639,330 shares of the Class B common stock. Sponsor is named as a Defendant as it is a necessary party for the relief requested.

17.    CarLotz, Inc. ("CarLotz") is a used car company and was incorporated under the laws of the State of Delaware on March 14, 2011. CarLotz's principal executive offices are located at 611 Bainbridge Street, Suite 100, Richmond, Virginia 23224. CarLotz is named as a Defendant as it is a necessary party for the relief requested.

18.    Acamar Partners Sub, Inc. ("Merger Sub") is a Delaware corporation, and direct wholly-owned subsidiary of Acamar Partners, incorporated by Acamar Partners on October 16, 2020 to facilitate the Merger. Merger Sub's principal executive office are located at 1450 Brickell Avenue, Suite 2130, Miami, Florida 33131. Merger Sub is named as a Defendant as it is a necessary party for the relief

requested.

## RELEVANT NON-PARTIES

19.     Raffaele R. Vitale is Acamar Partners' President.

20.     Juan Duarte is the Chief Operating Officer of Acamar Partners.

21.     Joseba Picaza is the Chief Financial Officer of Acamar Partners.

22.     The individuals identified in paragraphs 19 through 21 as well as Defendants Torres and Solorzano are collectively referred to herein as the "Executive Team." The Executive Team are managing members of the Sponsor, and as stated by the Prospectus, have beneficial ownership of the securities held directly by the Sponsor.

## THE DEFENDANTS' FIDUCIARY DUTIES

23.     By reason of the Defendants' positions with the Company as officers and/or directors, they are in a fiduciary relationship with Plaintiff and the other public stockholders of Acamar Partners and owe them a duty of care, loyalty, good faith, candor, and independence.

24.     By virtue of their positions as directors and/or officers of Acamar Partners, the Defendants, at all relevant times, had the power to control and influence Acamar Partners, did control and influence Acamar Partners, and caused Acamar Partners to engage in the practices complained of herein.

25.     In accordance with their duties of loyalty and good faith, the

Defendants are obligated to refrain from: (a) failing to disclose all material information regarding the Proposed Transaction; (b) participating in any transaction where the Defendants' loyalties are divided; (c) participating in any transaction where the Defendants receive, or are entitled to receive, a personal financial benefit not equally shared by the public stockholders of the corporation; and/or (d) unjustly enriching themselves at the expense or to the detriment of the public stockholders.

26.     Defendants directly owe Plaintiff and all Company stockholders a fiduciary duty of candor/disclosure, which requires them to disclose fully and fairly all material information within their control when seeking shareholder action, and to ensure that the Prospectus does not omit any material information or contain any materially misleading statements.

27.     Plaintiff alleges herein that the Defendants, separately and together, in connection with the Proposed Transaction, are knowingly or recklessly violating their fiduciary duties, including their duties of care, loyalty, good faith, candor, and independence owed to the Company.

## CLASS REPRESENTATION ALLEGATIONS

28.     Plaintiff brings this action on behalf of himself and as a class action pursuant to Rule 23 of the Rules of the Court of Chancery on behalf of all other holders of Acamar Partners common stock who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are

Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

29.    This action is properly maintainable as a class action because:

a.    The Class is so numerous that joinder of all members is impracticable. Acamar Partners has approximately 38,196,652 shares of common stock outstanding. The actual number of public stockholders of Acamar Partners will be ascertained through discovery.

b.    There are questions of law and fact that are common to the Class, including:

i.    whether the Defendants have breached their fiduciary duties with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction;

ii.    whether the Defendants have breached their fiduciary duty to obtain the best price available for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction;

iii.    whether the Defendants have breached their fiduciary duty to disclose fully and fairly all material information within the Board's control in connection with the Proposed Transaction;

> iv. whether Plaintiff and other members of the Class would suffer irreparable injury were the Proposed Transaction consummated; and
>
> v. whether Plaintiff and other members of the Class are entitled to damages as a result of the Defendants' wrongful conduct.

25.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

26.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

27.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class.

28.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**A.      Background of the Proposed Transaction**

30.     SPACs were invented in the 90's (associated then with penny-stock frauds), then boomed again in the early 2000's (then flagged for disclosure abuses). In 2009, after a fall-off during the financial crisis, there was one single $36 mm SPAC IPO. However, market uncertainty and the Pandemic have forced companies to rethink their funding and SPACs have gone from a liquidity path of last resort (with a tumultuous history with regulators) to the darling of 2020. In 2020, the amount raised by SPACs has grown over 500% (from $13.6B in 2019 to $83.4B in 2020). The Proposed Transaction may ride high on the wave of this hype, but thus far stockholders have not been provided with adequate information for them to decide whether it is fair and so are unable to cast an informed vote and/or redeem their shares.

31.     On February 26, 2019, Acamar Partners completed its initial public offering ("IPO"). After the IPO, Acamar Partners' management team commenced an active search for prospective businesses or assets to acquire in its initial business combination. Acamar Partners initially focused its efforts on identifying consumer and retail businesses in North America and Western Europe, including travel, retail, food and beverage, hospitality, luxury goods, fashion, consumer branded products, lifestyle and leisure products and services (including fitness), and beauty.

32.     During the middle of this process, the COVID-19 Pandemic ("Pandemic") swept across the country temporarily shutting the economy and

financial markets. As stated in the *Detailed Chronology of Events* section of the

Prospectus:

> On November 8, 2019, CarLotz engaged Barclays Capital Inc. ("Barclays") to provide financial advisory services with respect to strategic opportunities involving CarLotz, including a possible sale of CarLotz to a third party. That process was ultimately suspended in March 2020 due to the impact of the COVID-19 pandemic.

Prospectus at 88.

33.     By the summer of 2020, the financial markets had largely recovered leading Acamar Partners and CarLotz to resume their M&A activities. On August 25, 2020, Deutsche Bank Securities, Inc. identified CarLotz as a potential acquisition opportunity and "shared high-level information about CarLotz, the used vehicle market and some of CarLotz' public peers" with Acamar Partners. Prospectus at 88. This initial outreach rapidly developed into a breakneck month-and-a-half sales process, including diligence, culminating in the Proposed Transaction.

34.     As a result, on October 21, 2020, less than two months later, upon receiving confirmation that subscription agreements had been delivered with respect to the private investment in public equity investment in the amount of $125 million (the "PIPE Investment"), Acamar Partners, Merger Sub and CarLotz executed the Merger Agreement. The very next day, the Acamar Partners announced the Merger.

35.     The hasty process is unsurprising as Defendants have several unique incentives to ensure a deal is reached before February 26, 2021 when the SPAC is

set to terminate (referred to as the "Termination"). First, Defendants hold millions of shares through their beneficial ownership of the Sponsor all of which may terminate worthless if a deal is not reached before the Termination, as stated in the Prospectus:

> If the merger or another business combination is not consummated by February 26, 2021 (or later, as such term may be extended in accordance with the organizational documents of Acamar Partners and the merger agreement), Acamar Partners will cease all operations except for the purpose of winding up, redeeming 100% of the outstanding public shares for cash and, subject to the approval of its remaining stockholders and its board of directors, dissolving and liquidating. ***In such event, the 7,639,330 Founder Shares held by the Sponsor, which were acquired for an aggregate purchase price of $25,000 prior to the Acamar Partners IPO***, ***would be worthless because the holders are not entitled to participate in any redemption*** or distribution with respect to such shares. ***Such shares had an aggregate market value of $79,067,065.50 based upon the closing price of $10.35 per share on Nasdaq on December 21, 2020***.

*See* Prospectus at 105. In other words, if Defendants fail to consummate a transaction before February 26, 2021, then almost $80 million dollars of shares will be terminated, worthless. Each member of the Executive Team (which includes Defendants Torres and Solorzano) is a managing member of the Sponsor, and each such person therefore has beneficial ownership of these securities. The Proposed Transaction is expected to close ***just one month*** before the securities held by the Executive Team would be rendered worthless.

36. Second, Defendants and the Executive Team, through their beneficial ownership, hold an aggregate of 6,074,310 Private Placement Warrants (the

"Warrant(s)"). As disclosed on Page 105 of the Prospectus:

> The purchase of the Private Placement Warrants took place on a private placement basis simultaneously with the consummation of the Acamar Partners IPO and the underwriters' election to partially exercise their option to purchase additional Acamar Partners units. A portion of the proceeds Acamar Partners received from these purchases were placed in the Trust Account. Such warrants had an aggregate market value of ***$11,541,189.00*** based upon the closing price of $1.90 per warrant on Nasdaq on December 21, 2020. ***The Private Placement Warrants will become worthless if Acamar Partners does not consummate a business combination by February 26, 2021*** (or later, as such term may be extended in accordance with the organizational documents of Acamar Partners and the merger agreement).

37.     Third, as part of the PIPE Investment, the Sponsor has committed to purchase 250,000 shares for $2,500,000.

38.     Fourth, Defendants Solorzano and Skinner will become members of the post-merger company's board of directors. As such, in the future, Defendants Solorzano and Skinner will receive any cash fees, stock options or stock awards that the post-merger company's board of directors determines to pay to its non-executive directors as well as continued employment in the Company.

39.     Fifth and most critically, if Acamar Partners is unable to complete a business combination before February 26, 2021, its executive officers will be ***personally liable*** under certain circumstances to ensure that the proceeds in the "Trust Account are not reduced by the claims of target businesses or claims of vendors or other entities that are owed money by Acamar Partners for services rendered or contracted for or products sold to Acamar Partners." Prospectus at 105.

If Acamar Partners consummates a business combination, on the other hand, Acamar Partners will be liable for all such claims.

40.     For these reasons, the Defendants and Executive Team had every incentive to rush into the Proposed Transaction prior to the Termination, regardless of whether it is ultimately in the best interests of stockholders. Put simply, if Defendants fail to consummate a transaction before February 21, 2021, they will lose tens of millions of dollars in value of their shares, their Warrants, their PIPE Investment, their positions on the board of directors of CarLotz, and may be subject to personal liability.

41.     In consideration of the vast number of unique interests Defendants have in the Merger, it highly suspect that the Board failed to disclose even the most basic of information typically disclosed in these transactions to justify fairness. Defendants did not obtain a fairness opinion. Defendants did not disclose the projections and valuation analyses which they utilized in making their decision. Defendants did not disclose the results of Goldman Sachs' conflicts check. Defendants did not disclose any background information to the Merger or their efforts to ensure that they maximized value for all stockholders and not just themselves. Their failure to disclose this basic information is highly suspicious and sounds in the actions which gave rise to their association with 'penny-stock frauds' in the 90's.

42.     On December 30, 2020 Defendants authorized the filing of the deficient Prospectus with the SEC. The Defendants were obligated to carefully review the Prospectus before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any of the material omissions identified below.

## B.     The Prospectus Omits Certain Material Information

43.     While fairness opinions are not required by law, today's directors are typically unwilling to approve a transaction and let the shareholders assess the merits of the deal without one. As a result, "a fairness opinion from an investment bank" has become "a practical requirement to get the deal done."[1] Indeed, the Board considered financial projections and analyses in lieu of a fairness opinion. However, the Board then omitted these financial analyses and projections while presenting the Merger as fair.

44.     The Prospectus states that the Board assessed the information typically used to support a fairness opinion, including projections and analyses such as a *Discounted Cash Flow Analysis* and *Comparable Public Companies Analysis*. As described on Page 102 of the Prospectus:

> In assessing the valuation offered for CarLotz, Acamar Partners' officers and directors took into consideration the capital markets and

---

[1] *See* Troy A. Paredes, *Corporate Decisionmaking: Too Much Pay, Too Much Deference; Behavioral Corporate Finance, CEOs, and Corporate Governance*, 32 FLA. ST. U.L. REV. 673, 723 (Winter, 2005).

valuation views shared by their financial advisor (including relative valuations and other performance metrics of a number of public peers), as well as the various growth areas in which the team could support CarLotz. In view of, among others, the due diligence and financial analysis done by the Acamar Partners team, CarLotz' business plan, CarLotz' superior expected revenue and gross profit growth and financial return metrics (including medium-term run rate gross profit margin, EBITDA margin and net contribution per unit) compared to peers in the industry, Acamar Partners' discounted cash flow valuation analysis (based on internal assumptions and customary practices), and the relative discount to publicly listed peers such as Carvana and Vroom in terms of enterprise value to the 2022 expected revenue and gross profit, Acamar Partners' directors assessed that the valuation offered for CarLotz was fair.

45.     The valuation analyses and future projections of a Company have been repeatedly hailed by this Court as fundamental for stockholders to cast an informed vote on a Merger. In early September 2020, Acamar Partners requested that Goldman Sachs "start their conflicts check process on CarLotz in order to engage them as its financial and capital markets advisors." Prospectus at 89. Plainly, stockholders would find the financial analyses conducted by the Company's financial advisor and/or management to significantly alter the 'total mix' of information available to them when deciding how to vote. Especially considering that the Board either looked at the financial analyses and decided not to obtain a fairness opinion, or in the alternative, Goldman Sachs was unable or unwilling to provide one.

46.     Guidance from the SEC indicates that this information would is relevant to stockholders' decision making when deciding whether to vote for or

against the Merger and/or redeem their shares. As stated below:

> Once the SPAC has identified an initial business combination opportunity, the shareholders of the SPAC will have the opportunity to redeem their shares and, in many cases, vote on the initial business combination transaction. Each SPAC shareholder can either remain a shareholder of the company after the initial business combination or redeem and receive its pro rata amount of the funds held in the trust account.

> This is an important investor consideration as the SPAC changes from essentially a trust account into an operating company. As an investor, depending on how you view the prospective initial business combination and its valuation, you can decide whether to redeem your shares for a pro rata share of the aggregate amount then on deposit in the trust account or remain an investor in the combined company going forward.

*See What You Need to Know About SPACs – Investor Bulletin*, U.S. SECURITIES AND EXCHANGE COMMISSION, available at https://www.sec.gov/oiea/investor-alerts-and-bulletins/what-you-need-know-about-spacs-investor-bulletin (last accessed Jan 6, 2021).

47. Failing to provide the valuations analyses and projections considered by the Board, stockholders have no means to evaluate whether they should redeem their shares or how to vote. Instead, the Board is asking stockholders, on the one hand to take their representations at face-value, that a merger with a used car company is in their "best interests," and in the other hand obscuring the valuation analyses and projections which will provide a foundation to their assertion.

48. The omissions here are especially alarming considering that, although CarLotz utilizes a consignment business model, it appears in publicly available investor presentations that CarLotz is including actual vehicle sales in revenue

projections which hyperinflates revenue. CarLotz is also projecting to increase sales by almost 10x within two years which, again, strains credulity as in a consignment model CarLotz is grossing a significantly smaller margin per car exclusive of any additional revenue for vehicle financing. Without disclosing the actual projections and financial analyses relied upon by the Board within the Prospectus, stockholders have no other option but to turn to the realm of publicly available information in order to determine whether CarLotz, a used retail car consignment company, will be able to scale their business and if the Merger is truly in their best interests.

49.     In sum, the omission of the above-referenced information renders the Prospectus materially incomplete, in violation of Defendants fiduciary duties. Absent disclosure of the foregoing material information prior to the Stockholder Vote, Plaintiff will be unable to cast an informed vote, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## FIRST CAUSE OF ACTION

### (Breach of Fiduciary Duties Against All Defendants)

50.     Plaintiff repeats and realleges each allegation set forth herein.

51.     The Defendants have violated their fiduciary duties owed to the public stockholders of Acamar Partners.

52.     As alleged herein, the Defendants failed to provide Acamar Partners' public stockholders with all material information necessary to cast an informed vote

regarding the Proposed Transaction.

53.     As a result of the actions of Defendants, Plaintiff and the Class will suffer irreparable injury, and that they face the irreparable injury of an uninformed Proposed Transaction. Unless the Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class.

54.     Plaintiff and the members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from immediate and irreparable injury, which the Defendants' actions threaten to inflict.

## SECOND CAUSE OF ACTION

**(Breach of the Fiduciary Duty of Care
Against Defendant Solorzano In His Capacity As CEO)**

55.     Plaintiff repeats and realleges each allegation set forth herein.

56.     Defendant Solorzano violated his fiduciary duties owed as an officer to the public stockholders of Acamar Partners.

57.     Defendant Solorzano (1) signed the Prospectus in his capacity as an officer; (2) was identified throughout the sales process as the individual negotiating with CarLotz's Transaction Committee; (3) communicated with CarLotz concerning its valuation; (4) communicated Acamar Partners initial interest in a potential transaction with CarLotz; (5) led the discussions concerning the post-merger board

representation of Acamar Partners; and (6) participated in a number of calls with Goldman Sachs throughout the Proposed Transaction.

58. Defendant Solorzano's conduct as an officer during the sales process and Prospectus dissemination constituted a breach of his fiduciary duty to Acamar's public stockholders, in that he was intricately involved in the sales process and the information he relied upon was omitted. Defendant Solorzano has a fiduciary duty of care to ensure that all material information is disclosed to stockholders when soliciting their vote.

59. Plaintiff and the members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from immediate and irreparable injury, which the Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands relief in his favor and in favor of the Class and against Defendants, as follows:

A. Declaring that this action is properly maintainable as a Class action and certifying Plaintiff as the Class representative;

B. Preliminarily and permanently enjoining Defendants, Acamar Partners, Sponsor, CarLotz, Merger Sub and their counsel, agents, employees, and all persons acting under, in concert with, or for them from proceeding with, consummating, or

closing the Proposed Transaction and related proposals unless and until the Company discloses the material information discussed above which has been omitted from the Prospectus;

C.    Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of the wrongdoing;

E.    Awarding Plaintiff, the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

F.    Granting such other and further relief as this Court may deem just and proper.

Dated: January 7, 2021

Respectfully submitted,

**COOCH AND TAYLOR, P.A.**

*/s/Blake A. Bennett*
Blake A. Bennett (#5133)
Dean R. Roland (#6459)
The Nemours Building
1007 N. Orange St. #1120
Wilm., DE 19801
Tel.: (302) 984-3889

*Attorneys for Plaintiff*

**OF COUNSEL**

**MONTEVERDE & ASSOCIATES
PC** Juan E. Monteverde
Jordan M. Steele
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel.: (212) 971-1341

*Attorneys for Plaintiff*